cc: Fiscal Section

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA



FILED
CLERK, U.S. DISTRICT COURT
APR 25, 2019
CENTRAL DISTRICT OF CALIFORNIA
BY: ___BH___ DEPUTY

| | |
|---|---|
| GeoData Systems Management, Inc., <br><br>Plaintiff, <br><br>v. <br><br>American Pacific Plastic Fabricators, Inc., Hy Zornes, and individual, and Arthur Hochschild, III, an individual, <br><br>Defendants. | LACV 15-4125-VAP (JEMx) <br><br>**AMENDED FINAL ORDER GRANTING IN PART DEFENDANT AMERICAN PACIFIC PLASTIC FABRICATOR, INC.'S MOTION FOR CONTEMPT AND COERCIVE SANCTIONS AGAINST GEODATA AND BRUCE JACKIM FOR VIOLATION OF COURT ORDERS (DOC. NO. 276.)** |

Before the Court is a Motion for Contempt and Coercive Sanctions Against GeoData and Bruce Jackim for Violation of Court Orders (Doc. No. 276; hereinafter "Motion"), filed by Defendants American Pacific Plastic Fabricators, Inc. ("APPF") on October 29, 2018.  On November 19, 2018, APPF filed a Non-Opposition to the Motion for Contempt and Coercive Sanctions.  (Doc. No. 279.)  On November 20, 2018, Plaintiff GeoData Systems Management, Inc. ("GeoData") and Counter-Defendant Bruce Jackim ("Mr. Jackim") filed a late Opposition to Motion for Contempt (Doc. No. 280; hereinafter "Opposition") and on November 21, 2018, APPF filed an Objection to GeoData and Mr. Jackim's Opposition.  (Doc. No. 281, hereinafter "Objection".)

Under Local Rule 7-12, the failure to file any required document within the deadline may be deemed consent to the granting of the motion.  Under Local Rule 7-9,

GeoData and Mr. Jackim were required to file an Opposition to the Motion no later than ten (10) days after service of the Motion. Accordingly, the Opposition was due on November 8, 2018. GeoData and Mr. Jackim submitted their Opposition weeks after this deadline, on November 20, 2018. Nevertheless, the Court considers the merits of the Opposition.

The Court held a hearing on this contempt application on November 26, 2018. Counsel for GeoData and counsel for APPF both presented their oral arguments, and the Court ordered both parties to submit supplemental declarations to the Court by December 3, 2018 (Doc. No. 283) to address the language change, if any, on APPF's website from the date of the parties' settlement to the present.

On December 3, 2018, APPF submitted its supplemental declaration ("APPF Supplemental Declaration") detailing the relevant language change on GeoData's website. (Doc. No. 289.) Also on December 3, 2018, GeoData filed its supplemental pleading ("GeoData Supplemental Brief") arguing that the Court erred in its prior decisions to allow GeoData's prior counsel to withdraw and to grant APPF's Motion to Enforce, and that GeoData has not violated the parties' settlement agreement. (Doc. No. 290.)

On December 4, 2018, GeoData filed a "Corrected" supplemental brief ("GeoData Corrected Supplemental Brief") that contained three attachments that were omitted from the prior filing. (Doc. No. 291.) That same day, APPF filed an Objection to the Supplemental Filing by GeoData ("APPF Objection") arguing (i) that the timely GeoData Supplemental Brief was impermissible as the Court had asked for declarations,

2

not briefs, from the parties, and (ii) that the GeoData Corrected Supplemental Brief that contained the permissible declaration was filed untimely, after the December 3 deadline.

On December 7, 2018, GeoData filed a *Nunc Pro Tunc* Application seeking the Court's approval to file the Jackim Declaration and its exhibits after the December 3 deadline due to technical difficulties faced by counsel when attempting to file on December 3. (Doc. Nos. 293, 295.) On December 17, 2018, the Court denied GeoData's *Nunc Pro Tunc* Application for a lack of showing of good cause. (Doc. No. 296.)

After consideration of the papers filed in support of and in opposition to the Motion, and the parties' oral arguments presented at the November 26 hearing as well as the supplemental papers submitted by both parties, the Court GRANTS IN PART APPF's motion for contempt and coercive sanctions.

## I. BACKGROUND

On December 22, 2016, APPF and GeoData entered into a settlement agreement ("Settlement Agreement") to resolve the underlying action and the case has since been closed. The Court retained jurisdiction to enforce the terms of the parties' Settlement Agreement, which were adopted by the court in its December 27, 2016 Order of Dismissal ("Dismissal Order"). (Doc. No. 257.)

APPF and GeoData are both manufacturers of large orange naval target balloons, often called "killer tomatoes" by U.S. Navy personnel, and the underlying action disputed whether the mark "Killer Tomato" is a protectable trademark for the naval

target balloons, and if so, whether GeoData or APPF was the senior user and thus owner of the trademark. (Doc. No. 260 at 3.)

As part of the Settlement Agreement, (i) neither party was to disparage the other in any manner of communication whatsoever, and (ii) neither party was to claim exclusive trademark ownership of the term "Killer Tomato." (Doc. No. 291-2.)[1] Specifically, both APPF and GeoData were required to make changes to their respective advertisements to remove claims of exclusive ownership of a "Killer Tomato" trademark. (Doc. No. 291-2 at 2.) The Settlement Agreement also contained a provision entitling the prevailing party in a dispute arising from the Settlement Agreement to attorneys' fees. (Doc. No. 291-2 at 7.)

On July 30, 2018, APPF filed a Motion to Enforce Settlement Agreement (Doc. No. 260) after learning that GeoData had changed its advertising materials and published statements in publicly filed declarations that purportedly violated the Settlement Agreement. The Court held a hearing on the Motion to Enforce Settlement Agreement on August 32, 2018[2], and issued its final Order granting APPF's motion on September 28, 2018. (Doc. No. 270, hereinafter "September 28 Order".)

---

[1] APPF cites to specific paragraphs of the Settlement Agreement throughout the Motion, and cites to Docket No. 255 for the Settlement Agreement. Docket No. 255, however, only contains the first exhibit to the Settlement Agreement, and not the agreement itself. GeoData and Mr. Jackim attach the purported Settlement Agreement as the third exhibit to the Opposition. (Doc. No. 280-3.) However, the attachment was submitted without any declaration or other statement under penalty of perjury verifying its authenticity. The Settlement Agreement finally properly submitted as an attachment to the Jackim Supplemental Declaration filed by GeoData on December 4, 2018. (Doc. No. 291-2.) The Court thus cites to this docket entry for the Settlement Agreement.

[2] GeoData and Mr. Jackim did not appear at this hearing.

4

Per the September 28 Order, the Court found GeoData in violation of the Dismissal Order and ordered GeoData to:

1. modify its advertising materials immediately, including its instruction sheets on its website, to remove any reference to "Killer Tomato" as being GeoData's trademark, and submit proof of the modifications to the Court and to APPF no later than September[3] 10, 2018;

2. file a Notice of Errata (or similar filing) in the Ohio litigation withdrawing the offending language as delineated in the September 28 Order;

3. submit proof of the filing of the Notice of Errata to the Court and to APPF no later than October 10, 2018.

APPF, as the prevailing party, was awarded $4,170.00 as against GeoData for all fees incurred in connection to the Motion to Enforce. (Doc. No. 270, September 28 Order at 8-9.)

As of the date of filing of APPF's Motion, GeoData had not complied with any part of the September 28 Order, nor had GeoData provided the Court with any evidence of its intent to comply with the September 28 Order. (Doc. No. 276-1, Price Dec. ¶¶10, 13.)

On November 19, 2018, APPF informed the Court that, in the past few days, GeoData had taken certain actions in an apparent attempt to comply with the September 28 Order. Specifically, (1) GeoData added language to its website noting that "No registration of the term Killer Tomato™ is implied or claimed with respect to target balloons," and (2) GeoData withdrew offending language from the declarations in the trial

---

[3] The Court intended for this to state October, not September.

court filings of its Ohio litigation, yet did not withdraw the same language from its recent appellate court filings regarding the same case. (Doc. No. 279 at 2.) GeoData and Mr. Jackim, in their untimely Opposition, also informed the Court of these actions and note these as evidence of their substantial compliance with the Court's September 28 Order. (Doc. No. 280.)

After the September 28 Order was issued, GeoData also did the following: (1) filed an untimely motion to extend time to oppose APPF's Enforcement Motion[4]; and (2) filed a "protest" before the Government Accountability Office ("GAO") on or about September 10, 2018 seeking to redirect a winning government bid by APPF, as awarded by the Defense Logistics Agency ("DLA") for the "Killer Tomato" target balloons, to GeoData[5].

APPF in its Motion asks the Court to find GeoData and Mr. Jackim in civil contempt of the September 28 Order and to order various sanctions against them. (Doc. No. 276.)

## II. LEGAL STANDARD

"[C]ourts have inherent power to enforce compliance with their lawful orders through civil contempt." (Shillitani v. United States, 384 U.S. 364, 370 (1966).) Civil contempt consists of a party's disobedience to a specific and definite court

---

[4] The Court has denied this as moot. (Doc. No. 275.)

[5] GeoData's protest claimed the term "Killer Tomato" was GeoData's trademark and that APPF could not participate in government bidding or reference the mark. The GAO has since dismissed this protest.

6

order by failure to take all reasonable steps within the party's power to comply. (In re Dual-Deck Video Cassette Recorder Antitrust Litig., 10 F.3d 693, 695 (9th Cir. 1993).)

To obtain a civil contempt order, the moving party "has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court. The burden then shifts to the contemnors to demonstrate why they were unable to comply." (FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999) (quoting Stone v. City & County of S.F., 968 F.2d 850, 856 n.9 (9th Cir. 1992) (citations omitted)).)

The moving party must show more than "merely a preponderance of the evidence," (see United States v. Ayres, 166 F.3d 991, 994 (9th Cir. 1999) (quoting In re Dual-Decl. Video Cassette Recorder Antitrust Litig., 10 F.3d at 695)), but the standard is "less stringent than beyond a reasonable doubt." (Balla v. Id. State Bd. of Corrections, 869 F.2d 461, 466 (9th Cir. 1989) (citing United States v. Powers, 629 F.2d 619, 626 n.6 (9th Cir. 1980)).) "Willfulness is not an element of contempt" (FTC v. Productive Mktg., Inc., 136 F. Supp. 2d 1096, 1107 (C.D. Cal. 2001)); "there is no good faith exception to the requirement of obedience to a court order" (In re Dual-Decl. Video Cassette Recorder Antitrust Litig., 10 F.3d at 695.)

A court will not find a party in contempt when the party has taken all reasonable steps to comply with the court's order, so "[s]ubstantial compliance with the court order is a defense to civil contempt, and is not vitiated by a few technical violations where every reasonable effort has been made to comply." (Id. (internal quotations omitted).) Ultimately, "[t]he decision to hold a party in contempt of a court order rests with the

sound discretion of the trial court." (Transgo, Inc. v. Ajac Transmission Parts Corp., 768 F.2d 1001, 1022 (9th Cir. 1985).)

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." (Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986).) Accordingly, there are two types of civil contempt sanctions: compensatory and coercive. (Falstaff Brewing Corp. v. Miller Brewing Co., 702 F.2d 770, 778 (9th Cir. 1983).) "Compensatory sanctions are intended to compensate the aggrieved party for 'actual loss' resulting from the contemnor's noncompliance." (HM Elecs., Inc. v. R.F. Techs., Inc., No. 12-CV-2884-MMA (JLB), 2014 WL 12059031, at *3 (S.D. Cal. Apr. 18, 2014) (internal citation omitted).) Coercive sanctions are "intended to coerce the contemnor to comply with the court's orders in the future." (Richmark Corp. v. Timber Falling Consultants, 959 F.2d 1468, 1481 (9th Cir. 1992).)

## III. DISCUSSION

### A. Civil Contempt

To establish that GeoData should be held in civil contempt, APPF must demonstrate by clear and convincing evidence that GeoData violated the Order "beyond substantial compliance, and that the violation was not based on a good faith and reasonable interpretation" of the Order. (Wolfard Glassblowing Co. v. Vanbragt, 118 F.3d 1320, 1322 (9th Cir. 1997); Ahearn ex rel. N.L.R.B. v. International Longshore & Warehouse Union, Locals 21 & 4, 721 F.3d 1122, 1129 (9th Cir. 2013).) If APPF satisfies this initial test, the burden then shifts to GeoData to demonstrate why it was unable to

comply, i.e., that it "took every reasonable step to comply." (Stone v. City & Cnty of San Francisco, 968 F.2d 850, 856 n. 9 (9th Cir. 1992).)

The Court's Order is unambiguous. GeoData was required to: (1) modify its advertising materials to remove offending language; (2) file Notices of Errata (or similar filings) to remove offending language from its declarations in a lawsuit in Ohio; (3) submit proof of compliance with the foregoing by [the later date of] October 10, 2018; and (4) pay APPF its awarded attorney's fees in the amount $4,170.00.

At the time of APPF's October 29, 2018 filing of this Motion, GeoData had failed to do the things required by the Court's September 28 Order. (Doc. No. 276-1, Price Decl. ¶ 13.) On November 19, 2018, APPF notified the Court of certain actions taken by GeoData in an attempt to comply with the September 28 Order. (Doc. No. 279, hereinafter "Non-Opposition".) On November 20, 2018, GeoData and Mr. Jackim informed the Court of the same and filed a late Opposition arguing that their recent conduct shows substantial compliance with the Court's September 28 Order. (Doc. No. 280.)

Regarding the removal of offending language from declarations in the Ohio litigation, GeoData filed errata on November 17, 2018 withdrawing said language from declarations filed in the trial court, yet did not withdraw the same offending language in subsequent appellate court filings related to that case. (Doc. No. 279 at 2.) The September 28 Order found that the language in the publicly filed declarations "falsely implies that GeoData owns the 'Killer Tomato' trademark and APPF does not" and held it to be in violation of the Court's Dismissal Order and the parties' Settlement Agreement. (Doc. No. 270 at 8.) In order to be in substantial compliance, GeoData must withdraw the offending language

9

from not only the trial court filings, but also from the appellate court filings. It is ordered to do so forthwith and to provide proof of same with this Court.

Regarding the removal of offending language from GeoData's public website and advertising materials, GeoData has added the following clause to its website: "No registration of the term Killer Tomato™ is implied or claimed with respect to target balloons." (Doc. No. 279 at 2; http://www.geodatasys.com/TECH/TGT/Tomato.pdf.) Yet throughout its materials, specifically on its product assembly instruction sheets, GeoData still represents that Killer Tomato is its trademark. (Doc No. 289, Exhs. 1-2.) In at least one instruction sheet, GeoData represents that the Killer Tomato is its "exclusive property and trademark." (Doc. No. 289, Exh. 1.)

At the hearing on November 26, GeoData argued that the parties' settlement agreement allowed GeoData to claim ownership of the "Killer Tomato" trademark because in the agreement, APPF agreed that it would not prohibit GeoData from using the "TM" mark in relation to its "Killer Tomato" product.[6] (Doc. No. 291-2 at 2.) An agreement not to dispute a use of the "TM" mark, which puts third parties on notice of a party's intent to claim a term as a trademark, does not mean that APPF agreed that GeoData could claim ownership, or exclusive ownership, of a "Killer Tomato" trademark, which other language throughout the Settlement Agreement indicates is not permitted under the contract. (Doc. No. 291-2.)

---

[6] The relevant language in the Settlement Agreement states: "While APPF does not individually challenge GeoData's use of "TM" in connection with the term "Killer Tomato", APPF does not purport or assert to have authority to permit or not permit such use by GeoData and acts only onto itself – this representation cannot and does not abridge or bind any rights or act on behalf of any other third party or reach to any other third party interests who may or may not have rights to any term affected, if any such rights exist." (Doc. No. 291-2 at 2.)

Moreover, the Court's September 28 Order was clear: GeoData was required to "remove any reference to 'Killer Tomato' as being GeoData's trademark, and submit proof of the modifications to the Court…" (Doc. No. 270 at 8-9.)  GeoData's addition of any other language noting that it does not claim registration of a trademark for "Killer Tomato" does not relieve GeoData of its responsibility to remove any reference to Killer Tomato as GeoData's trademark.  GeoData has not substantially complied with the Court's order requiring it to remove the offending language from its website and advertising materials.

GeoData has also failed to provide evidence to the Court that it has paid APPF its attorney's fees in the amount of $4,170.00, as it was required to do per the September 28 Order.  Neither GeoData and Mr. Jackim's Opposition nor their Supplemental Brief address their failure to make this payment or attempt to explain why GeoData was unable to comply with this part of the Court's September 28 Order. (Doc. Nos. 280, 290.)

Although GeoData has made some efforts to comply with the September 28 Order, these untimely and incomplete efforts still fail to demonstrate substantial compliance with the September 28 Order.  APPF has met its burden of demonstrating by clear and convincing evidence that GeoData failed to comply substantially with the September 28 Order.

The burden then shifts to GeoData and Mr. Jackim to establish why they were unable to comply substantially with the September 28 Order.  (See Stone, 968 F.2d at 856.)  In their Opposition, GeoData and Mr. Jackim inform the Court of their delayed efforts to comply with the September 28 Order, yet do not provide any explanation to why they

were unable to comply timely and substantially with the four requirements of the September 28 Order. (Doc. No. 280 at 2-3.) Specifically, they do not explain why they were unable to timely remove the language from their website referring to "Killer Tomato" as their trademark, why they have not paid APPF the attorney's fees awarded, and why they removed the offending language in only some and not all of the declarations filed in the Ohio state court litigation.

As GeoData and Mr. Jackim have failed to comply substantially with the Court's September 28 Order, and have failed to meet their burden of establishing why they were unable to substantially comply with the September 28 Order, the Court GRANTS APPF's Motion and finds GeoData and Mr. Jackim in civil contempt of the September 28 Order.

### B. Sanctions Requested by APPF

"Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." (Gen. Signal Corp. v. Donallco, Inc., 787 F.2d 1376, 1380 (9th Cir. 1986) (citing United States v. United Mine Workers, 330 U.S. 258, 303–04 (1947)).)

APPF seeks three types of sanctions in its Motion: (1) disgorgement of GeoData's profits; (2) recovery of APPF's litigation expenses associated with GeoData's conduct leading to this contempt proceeding; and (3) coercive sanctions including the confinement of GeoData's principal, Mr. Jackim. (Doc. No. 276, Mot. at 5.)

### 1. Disgorgement of GeoData's Profits

The Court has discretion to use disgorgement of profits as a contempt sanction in a trademark infringement case.  (See Jerry's Famous Deli, Inc. v. Papanicolaou, 383 F.3d 998, 1004 (9th Cir. 2004) ("disgorgement of profits is a traditional trademark remedy and the district court's use of profits as a measure for the contempt sanction is hardly a novel proposition").)

APPF seeks disgorgement of all of GeoData's profits for all "Killer Tomato" targets sold between May 30, 2018 (when GeoData was advised of its breach of the Settlement Agreement) to the date (to be determined) when GeoData fully complies with the Court's Order.  (Doc. No. 276, Mot. at 6.)

The Court in its discretion determines that disgorgement of profits is not an appropriate sanction at this time.

### 2. Recovery of APPF's Litigation Expenses

The parties' Settlement Agreement provides that in any dispute arising between the parties, "the prevailing party shall be entitled to its reasonable attorneys' fees and necessary costs from the other."  (Agreement ¶ 11.)  (See also Cal. Civ. Code. §1717.) The Court in its September 28 Order awarded APPF its litigation expenses associated with bringing its Motion to Enforce Settlement Agreement based on the attorney's fees provision in the Settlement Agreement.

Moreover, a district court "may assess attorneys' fees … as part of the fine to be levied" on the party being sanctioned.  (Donovan v. Burlington N., Inc., 781 F.2d 680,

682 (9th Cir. 1986) (internal citation omitted).) Attorneys′ fees, "the cost of bringing the violation to the attention of the court[, are] part of the damages suffered by the prevailing party" and are thus a compensatory sanction. (AECOM Energy & Constr., Inc. v. Ripley, 2018 WL 376671, at *5 (C.D. Cal. Jan. 11, 2018) (quoting Cook v. Ochsner Found. Hosp., 559 F.2d 270, 272 (5th Cir. 1977)).)

APPF seeks its attorney's fees incurred in relation to GeoData's conduct in violation of the Court's September 28 Order and regarding this contempt proceeding. Specifically, APPF requests:

- $5,482.50 for all October 2018 work relating to this Motion;
- $870.00 for all September 2018 work relating to the preparation of the Ex Parte Application to Seek Final Order. (Dkt. 268);
- $2,835.00 for September 2018 work relating to the preparation of the opposition against GeoData's Motion to Extend Time prior to the Court's denial of that motion; and
- $4,170.00 for all September 2018 work relating to the opposition APPF filed against GeoData's "protest" in the GAO proceeding.

(Doc. No. 276, Mot. at 7.)

APPF also requests that all monetary payments that become due and remain unpaid shall accrue interest at the rate of ten percent (10%) per annum.

Had GeoData timely and fully complied with the September 28 Order, APPF's Motion for Contempt would have been unnecessary and APPF would not have incurred the $5,482.50 of attorneys′ fees and costs in drafting and filing such a motion. Neither

would APPF have incurred the $2,835.00 opposing GeoData's untimely Motion to Extend Time nor the $4,170.00 opposing GeoData's "protest" to the GAO.

The $870.00 of attorney's fees and costs for all September 2018 work relating to the preparation of the Ex Parte Application to Seek Final Order, however, would have been incurred regardless of GeoData's violation of the September 28 Order, because these costs were incurred prior to the issuance of the September 28 Order.

Consequently, the Court finds that attorneys' fees and costs totaling $12,487.50 are an appropriate sanction for GeoData's failure to comply with the September 28 Order.  (See AECOM Energy, 2018 WL 376671, at *5 (C.D. Cal. Jan. 11, 2018).)  This amount shall be paid no later than May 10, 2019.

### 3. Coercive Sanctions

The Court may impose coercive sanctions, including imprisonment, for disobedience of court orders.  (See e.g. Uphaus v. Wyman, 360 U.S. 72, 81 (1959).)  The Court may also impose as a coercive sanction a fine that accrues daily until the contempt is purged.  (General Signal v. Donallco, 787 F.2d 1376, 1380 (9th Cir. 1986).)

APPF requests two types of coercive sanctions: (1) that GeoData's principal, Mr. Jackim, be ordered into coercive confinement until GeoData and Mr. Jackim's contempt is purged; and (2) that GeoData and Mr. Jackim be fined $1,000.00 per day until the contempt is purged.  (Doc. No. 276, Mot. at 9.)  APPF seeks these two sanctions either in the alternative or in combination.  (Id.)

GeoData and Mr. Jackim have failed to comply substantially with two of the Court's orders: they initially violated the Dismissal Order and Settlement Agreement and they fail to comply substantially with the September 28 Order issued to enforce the terms of the Settlement Agreement. They did not timely oppose APPF's first Motion to Enforce the Settlement Agreement and they have not timely opposed APPF's current Motion for Contempt and Coercive Sanctions. The Court recognizes that in the few days prior to the November 26 hearing and subsequently thereafter, GeoData and Mr. Jackim have made some efforts to comply with the September 28 Order, but these have been incomplete and untimely.

Because GeoData and Mr. Jackim have failed to comply substantially with the Court's September 28 Order, but have shown some motivation to comply, the Court imposes a daily fine of $1,000.00 beginning on May 3, 2019 paid to the Court until GeoData and Mr. Jackim file an affidavit with the Court evidencing full compliance with September 28 Order. (See HM Elecs., Inc. v. R.F. Techs., Inc., No. 12-CV-2884-MMA (JLB), 2014 WL 12059031, at *7 (S.D. Cal. Apr. 18, 2014) (imposing daily fine of $2,500 so long as the defendant continued to violate the terms of a preliminary injunction).) The Court find no further coercive sanctions are appropriate at this time.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART APPF's Motion for Contempt and Coercive Sanctions. The Court finds GeoData and Mr. Jackim in civil contempt of the September 28 Order and orders the following:

(1) APPF is awarded its attorney's fees and costs of $12,487.50 as against GeoData and Mr. Jackim. This amount shall be paid no later than May 10, 2019.

(2) Beginning on May 3, 2019, GeoData and Mr. Jackim shall pay a daily fine of $1,000.00, payable to the Court, until they file an affidavit outlining their full compliance with the September 28 Order.

**IT IS SO ORDERED.**

Dated: 4/25/19

Virginia A. Phillips
Chief United States District Judge